UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMANTHA DELANE RAJAPAKSE,<br><br>    Plaintiff,<br><br>    v.<br><br>FREELANCER,<br><br>    Defendant. | Case No. 24-cv-00267-WHO<br><br>**ORDER ON THE SECOND MOTION TO DISMISS**<br><br>Re: Dkt. No. 49 |

    Plaintiff Samantha Rajapakse ("Rajapakse"), proceeding pro se, filed a Second Amended Complaint ("SAC") in this case, following my previous Order in which I *sua sponte* dismissed her first amended complaint with leave to amend for lack of subject matter jurisdiction. *See* Order Dismissing Complaint Sua Sponte with Leave to Amend ("Prior Order") [Dkt. No. 46]. Third party defendant, Freelancer USA, Inc. ("Freelancer USA"), the only party that has been served, filed a second Motion to Dismiss, asserting that Rajapakse has sued the wrong party and that Rajapakse's complaint lacks subject matter jurisdiction because she continues to fail to plead the adequate jurisdictional amount. I agree. For the reasons explained more in depth below, the Motion to Dismiss is GRANTED. Rajapakse's Second Amended Complaint is DISMISSED. Because she has already had three attempts to properly bring this case in the Northern District of California and she remains unable to meet the jurisdictional requirements, the case is DISMISSED WITH PREJUDICE.[1]

**BACKGROUND**

**Factual Background**

---

[1] On August 26, 2025, Rajapakse filed a Motion for Summary Judgment. Dkt. No. 55. Given that the named defendant has yet to enter the case and no discovery has commenced, the motion is premature. In any event, the Motion for Summary Judgment is DENIED as mooted by this Order.

1  The following background is based on my best understanding of Rajapakse's allegations
2  brought in the SAC.
3  Rajapakse is a Tennessee resident. SAC ¶ 4. She has filed a complaint against a company
4  called Freelancer, and alleges that Freelance is located in Sydney, Australia, and is both a parent
5  company of and a d/b/a of an online platform named Escrow.com. *See* SAC ¶¶ 6–7.
6  In April 2021, Rajapakse decided to purchase a vehicle on a website called "eBay Motors"
7  using the support of Escrow.com. SAC ¶ 17. She located a car that appeared in good condition
8  and offered the seller, a Virginia resident, a price of $1,900. SAC ¶ 17. The seller agreed. SAC ¶
9  17. Because of the ongoing COVID-19 pandemic, Rajapakse reached out to Escrow.com to
10  confirm that the vehicle would be inspected prior to starting a transaction. SAC ¶ 18.
11  Escrow.com confirmed with Rajapakse that her funds were protected in the event of any issue with
12  the vehicle. SAC ¶ 18. Rajapakse placed $1,965 in her Escrow.com account to account for the
13  purchase of the car and the escrow fee for Escrow.com. SAC ¶ 20.
14  When the vehicle arrived, Rajapakse performed a visual inspection. SAC ¶ 21. When she
15  turned the car on, a plume of "large dark smoke came from the exhaust, and the engine had a loud
16  pinging noise." SAC ¶ 21. After taking the car to the Tennessee Department of Motor Vehicles, a
17  supervisor informed the State of Tennessee about the condition of the car. SAC ¶ 21. Rajapakse
18  next took the car for a vehicle inspection at Goodyear Auto. SAC ¶ 22. A Goodyear employee
19  informed her that the engine was defective and would need to be replaced. SAC ¶ 22. Following
20  another inspection, Rajapakse learned that a number of aspects of the car were not in working
21  condition. SAC ¶ 23 (alleging damage to the compression, starter, alternator, thermostat, axles,
22  sway bar, gasoline tank, and coolant line). SAC ¶ 23. When looking under the hood, Rajapakse
23  found out that several parts of the car were held together by zip ties and tape. SAC ¶ 23.
24  Rajapakse reached out to the seller, who agreed to reduce the price of the sale to $300 to
25  account for the body of the car, so that Rajapakse could spend the outstanding money on repairs.
26  SAC ¶ 27. After contacting Escrow.com, however, the General Manager ("Elsegood") disagreed
27  that a new price was acceptable. SAC ¶ 28. He instead advised Rajapakse to split the costs with
28  the seller to return the car and informed her that he would "handle the return of the vehicle to the

1   seller." SAC ¶ 28. He did not. SAC ¶ 28. Instead, Elsegood advised the seller to demand the
2   full price of the car or that Rajapakse pay the full amount to return the vehicle. SAC ¶ 29. At
3   some point, the seller informed Rajapakse that she "should have known" that the vehicle would be
4   in poor condition and refused to pay for its return. SAC ¶ 31. Elsegood told Rajapakse that she
5   needed to pay for the car's return, and that he intended to use her escrow funds to pay for the
6   transaction. SAC ¶ 31. Rajapakse did not consent, and all communication with the seller and
7   Elsegood ceased. SAC ¶ 31.

8       During the ongoing dispute, Rajapakse was unable to get registration of the car for some
9   period of time. This put her in danger of state fines, so she paid $25 per day to store the vehicle.
10  SAC ¶ 36. Additionally, she has needed to use rideshare services to get around, ranging from
11  $8.00 to $63.00 for various trips or in daily expenses. SAC ¶ 42. On an unknown date, Rajapakse
12  secured registration of the car in the State of Tennessee. SAC ¶ 45.

13      Rajapakse appears to allege several state law causes of action against Escrow.com. These
14  include causes of action for: Breach of Fiduciary Duty, Emotional Distress, Loss of Wages. SAC
15  ¶¶ 48–67. She refers to California and Tennessee law throughout the SAC. In relief, she seeks
16  $2,500 "per incident" of California Escrow law violations, monetary penalties for breach of
17  fiduciary duty, $75,000 in punitive damages, and the return of her lost $1,965 as a result of her
18  interactions with Escrow.com. SAC ¶¶ 72–76.

19  **Procedural Background**

20      Rajapakse first filed a complaint relating to the above-described events in the Southern
21  District of California. *See* Freelancer Request for Judicial Notice [Dkt. No. 33-6]. In that case,
22  Rajapakse sued Escrow.com, Ebay, Ebay Motors, and Evans A. Boakye. *Rajapakse v.*
23  *Escrow.com*, No. 21-cv-0801-GPC-MDD at Dkt. No. 1 ("*Rajapakse I*"). There, the court
24  dismissed the complaint because of improper venue. *Rajapakse v. Escrow.com*, No. 21-cv-0801-
25  GPC-MDD, 2021 WL 2473933 (S.D. Cal. June 17, 2021). The court further recommended that
26  she "re-file the lawsuit at a different federal court, specifically in the location that is related to
27  what is alleged in the Complaint." *Id.* at *2.

28      Rajapakse again filed a case in federal court, this time in the Eastern District of Tennessee.

3

*See Rajapakse v. Internet Escrow Services & Ebay Motors*, 1:21-cv-00158-CLC-CHS, 2022 WL 4783041 at Dkt. No. 1 ("*Rajapakse II*").  In that case, Rajapakse sued Internet Escrow Services ("IES") d/b/a Escrow.com and Ebay Motors, alleging claims for fraud, negligence, and breach of contract.  *Rajapakse II* at Dkt. No. 2.  On September 30, 2022, the court dismissed Rajapakse's amended complaint with prejudice in part.  *Rajapakse II* at Dkt. No. 64.  The court dismissed Rajapakse's claims for breach of contract without prejudice, because she failed to plead the sufficient jurisdictional amount required for diversity jurisdiction.  *Rajapakse II* at *4 ("Put another way, for federal jurisdiction to exist, Plaintiff would have to have a possibility of recovering the $1,900 purchase price of the vehicle approximately forty times over.  That is inconceivable in this breach-of-contract action.").

Following the dismissal in the Eastern District of Tennessee, and instead of amending her remaining cause of action in that court, Rajapakse filed a new complaint in the Northern District of California.  *See* Compl. [Dkt. No. 1].  In the new Complaint, Rajapakse names "Freelancer, a foreign Company d/b/a Escrow.com, business in [the] United States" as defendant[s].  *Id.*  After a failed attempt to serve that named party at an address in San Francisco, *see* Dkt. No. 24, the Hon. Kandis Westmore ordered the U.S. Marshal to serve defendant's registered agent at an address in Sacramento.  *See* Dkt. No. 26.  On February 5, 2025, counsel to IES filed a notice to the court explaining that although IES is a d/b/a of Escrow.com, Freelancer USA is not.  Dkt. No. 27 at 1.  The notice also explained that Freelancer Limited, an Australian entity, had not yet been served in this matter.  Dkt. No. 27-3 at 2.  The notice explained that Freelancer Limited, an Australian entity, is a parent company of IES.  *Id.*  Without any further intervention by the court, the summons was returned executed on May 22, 2025.  Dkt. No. 32.

On May 27, 2025, Freelancer USA filed a Motion to Dismiss the complaint, asserting that the complaint should be dismissed, among other reasons, because Freelancer USA was served but is not "Freelancer, a foreign Company d/b/a Escrow.com."  *See* Dkt. No. 33 at 3–4, 7–8.  On July 9, 2025, I dismissed the first amended complaint sua sponte with leave to amend, holding that this court lacked subject matter jurisdiction over the case because Rajapakse failed to plead the requisite jurisdictional amount.  *See* Prior Order.  Rajapakse timely filed her Second Amended

4

1   Complaint on July 15, 2025.  Dkt. No. 48.  On July 23, 2025, Freelancer USA again moved to
2   dismiss the complaint for lack of jurisdiction.  Motion to Dismiss ("Mot.") [Dkt. No. 49].
3   Rajapakse Opposed the motion.  Opposition to the Motion to Dismiss ("Oppo.") [Dkt. No. 51].
4   Freelancer USA replied.  Reply ISO the Motion to Dismiss ("Reply") [Dkt. No. 53].
5       I found the motion suitable for disposition without a hearing pursuant to Civil Local Rule
6   7-1(b).

## LEGAL STANDARD

### I.   Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction."  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested.  *Id.*

A challenge pursuant to Rule 12(b)(1) may be facial or factual.  *See Safe Air Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint.  *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction.  *See Safe Air*, 373 F.3d at 1039.  To resolve this challenge, the court assumes that the allegations in the complaint are true and draws all reasonable inference in favor of the party opposing dismissal.  *See Wolfe*, 392 F.3d at 362.

"By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air*, 373 F.3d at 1039.  To resolve this challenge, the court "need not presume the truthfulness of the plaintiff's allegations."  *Id.* (citation omitted).  Instead, the court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id.* (citations omitted). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must

furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003)).

## II.     Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). This standard is not akin to a probability requirement, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

"A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however

1  inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by
2  lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *see also Bretz v.*
3  *Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  However, pro se pleadings must still
4  allege facts sufficient to allow a reviewing court to determine whether a claim has been stated.
5  *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  "A pro se litigant
6  must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is
7  absolutely clear that the deficiencies of the complaint could not be cured by amendment."  *Cato v.*
8  *United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) (citation omitted).

## DISCUSSION

### I. Rajapakse fails to plead the requisite jurisdictional amount

Freelancer correctly argues that Rajapakse continues to fail to plead the jurisdictional amount required to maintain a case in federal court.  Mot. 6.  As I have previously explained, federal courts are courts of limited subject matter jurisdiction.  *See* Prior Order at 2 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 377 (1994)).  In the SAC, Rajapakse continues to plead her case pursuant to diversity subject matter jurisdiction.  *See generally* SAC. She acknowledges that diversity jurisdiction requires citizenship between diverse parties and that the amount in controversy must exceed $75,000.  SAC ¶ 2.  And, although she alleges diverse citizenship from her stated defendant, Freelancer (an Australian entity), she continues to fail to plead the jurisdictional amount.

Having closely reviewed the SAC, and construing Rajapakse's complaint liberally as a pro se litigant, *see Erickson*, 551 U.S. at 94, I determine that Rajapakse has at most pleaded approximately $60,000 worth of damages.  Assuming that she paid $25 to store her car every day from April 2021 through December 2023 (at which point she filed the Complaint in this case), that amounts to $25 per day for approximately 1,000 days (2 years and 9 months).  That totals $25,000 for storage fees.[2]  Rajapakse also alleged that she would spend anywhere between $8 and $63

---

[2] I note that this amount appears unlikely because Rajapakse admits in the SAC that she eventually registered the vehicle in Tennessee, but I assume there may be some overlap with unalleged registration fees.  *See* SAC ¶ 45.

7

daily for rideshare services. SAC ¶42. This is a wide range. She has not provided particularized receipts or a sum total of how much these services cost her over the course of 2 years and 9 months, but, again liberally construing, assuming she spent the average of that amount (totaling $35) per day, that would ad $35,500 to her damages amount. Finally, Rajapakse contends that she should be reimbursed $1,965 that Escrow.com kept from her from the initial transaction involving the vehicle. SAC ¶ 75. In total, this amounts to $62,465 in alleged damages. This does not meet the jurisdictional amount.[3] That is not to say that Rajapakse has no claim, generally speaking. It is likely that she states an adequate claim for relief in the appropriate state court.

For that reason alone, I GRANT Freelancer USA's Motion to Dismiss.

## II.    Whether Rajapakse has served the correct party

Because I dismiss the SAC on jurisdictional grounds, I decline to address Freelancer USA's repeated assertions that Rajapakse has sued the wrong party. Prior to the filing of this Order, Freelancer USA filed a notice to this court explaining its understanding of the relationship between Freelancer USA and other entities within the Freelancer, Ltd. corporate family. *See* Dkt. No. 56. In any event, it seems clear from the face of the SAC that Rajapakse's causes of action stem from her interactions with Escrow.com. To the extent that there is a relationship between Escrow.com, IES,[4] and any of the Freelancer entities, that is a problem Rajapakse must resolve should she choose to bring this case again in the appropriate state court. Given that counsel for Freelancer USA in this case is the same as counsel for IES in the Tennessee action and Freelancer, Ltd., an Australian entity, *see* Dkt. No. 27-3, I can only expect that he will anticipate such a filing.

---

[3] Rajapakse also seeks punitive damages "in the amount of $75,000" in a bald attempt to adequately plead the jurisdictional amount. SAC ¶ 74. I previously dismissed Rajapakse's breach of contract cause of action requesting punitive damages because punitive damages are not available for California breach of contract cases. *See* Prior Order at 3 (citing *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375 (9th Cir. 1985). She now seeks the same relief for an alleged "breach of fiduciary duty." Under both California and Tennessee law, to adequately plead a cause of action for fiduciary duty, a plaintiff must first establish that a fiduciary relationship exists between the parties in the first instance. *See Pierce v. Lyman*, 1 Cal. App. 4th 1093 (1991); *Ann Taylor Realtors, Inc. v. Sporu*, 2010 WL 4939967 (Tenn. Ct. App. Dec. 3, 2010). Rajapakse has made no such showing, and so fails to plead a cause of action pursuant to Fed. R. Civ. P. 12(b)(6). Rather, the SAC continues to sound in contract, for which punitive damages are not available.

[4] As I previously explained, Rajapakse successfully brought a suit against IES in the Tennessee action, *Rajapakse II*. Prior Order at 2.

**CONCLUSION**

For the reasons explained above, Freelancer's Motion to Dismiss is GRANTED and the SAC is DISMISSED WITH PREJUDICE. The Motion for Summary Judgment filed at Dkt. No. 55 is DISMISSED as MOOT by this Order. The September 10, 2025, case management conference and associated deadlines are VACATED. Judgment shall be entered in accordance with this Order and the Clerk shall close the file in this matter.

Although this case is now dismissed with prejudice, as I explained above Rajapakse may very well have a legal claim that is best suited in state court. Rajapakse may therefore still benefit from the free limited legal assistance offered by the Legal Help Desk. She can do so by calling the appointment line at (514) 782-8982 or by emailing fedpro@sfbar.org. For more information, visit: cand.uscourts.gov/about/court-programs/legal-help-desks/.

**IT IS SO ORDERED.**

Dated: August 29, 2025

William H. Orrick
United States District Judge